# No. 22-12971-J

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

v.

ROSHAWN JERMAINE DAVIS,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

BRIEF OF THE APPELLANT
ROSHAWN JERMAINE DAVIS

Jacqueline E. Shapiro, ESQ.
Counsel for Appellant
40 N.W. 3rd Street, PH 1
Miami, Florida 33128
Tel. (305) 403-8207

# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLOSURE STATEMENT

## United States v. Roshawn Jermaine Davis
## Case No. 22-12971-J

Appellant Roshawn Davis files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Bloom, Hon. Beth

Botero, Monique

Byrne, John Richard

Caruso, Michael

Davis, Roshawn Jermaine

Dodin, Yara

Donnelly, Paul Joseph

Fajardo Orshan, Ariana

Ferrer, Wifredo A.

Galvin, Jamie

Gonzalez, Juan Antonio

Greenberg, Benjamin G.

Grosnoff, Nicole

Korchin, Paul Maury

Marcet, Daniel

McAliley, Hon. Chris M.

Nelson, Kirsten R.

Noto, Kenneth

O'Sullivan, Hon. John J.

Otazo-Reyes, Hon. Alicia M.

Reid, Hon. Lisette M.

Rier, Andrew

Rubio, Lisa Tobin

Shadley, Frederic

Shapiro, Jacqueline Esther

Silverio, Dayron

Silverstein, Joan

Sundaram, Sivashree

Torres, Hon. Edwin G.

Turnoff, Hon. William C.

Ungaro, Hon. Ursula

Valdes, Yisel

Vereen, Roderick Darrell

Williams, Hon. Kathleen M.

## STATEMENT REGARDING ORAL ARGUMENT

The defendant respectfully submits that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision making process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS. . . . . . . . . . . . . . . . . . . . . . . . . . C-1

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    Course of Proceedings and Disposition in the District Court . . . . . . . . . . . . 2

    Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ARGUMENT AND CITATIONS OF AUTHORITY . . . . . . . . . . . . . . . . . . . . . 22

I.    Davis's Conspiracy Conviction Must Be Vacated Where the District
    Court Failed to Instruct the Jury That a Defendant Cannot Conspire with
    a Government Informant, and the Majority of the Evidence Against
    Davis Focused on His Interactions with a Government Informant . . . . . . . 22

II.   Davis's Conspiracy Conviction Must Be Vacated Where the District
    Court's Response to a Jury Question Failed to Dispel Confusion about

Whether a Government Informant Can Enter into an Illegal Conspiracy

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

III.   The Cumulative Effect of Multiple Trial Errors, Encompassing Repeated

Improper and Prejudicial Comments on the Defendant's Right to

Silence, Pervasive Inadmissible and Disparaging Opinion Testimony,

Improper Prosecutorial Comments, and Core Instructional Errors,

Deprived the Defendant of a Fair Trial, Warranting Reversal . . . . . . . . . . 34

A.   Repeated improper and prejudicial comments on the defendant's

right to silence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

B.   Repeated inadmissible and prejudicial opinion testimony by

government officers interfering in the jury's determination . . . . . . . 38

C.   The cumulative effect of the multiple trial errors impaired the

fairness of the trial, contrary to Fifth and Sixth Amendment

guarantees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

IV.   The District Court Erred as a Matter of Law When it Increased Davis's

Sentencing Guidelines Range Based on Hearsay Information Provided by a

Government Informant Without Making a Finding about the Informant's

Credibility, Although Davis Made Well-grounded Challenges to the Credibility

of the Informant and the Reliability of the Hearsay Information . . . . . . . . 44

A.    The district court improperly increased Davis's offense level, and corresponding sentencing guidelines range, based on hearsay information provided by a government informant without making a finding about the informant's credibility, as to which Davis made well-grounded challenges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

B.    The district court improperly increased Davis's criminal history category, and corresponding sentencing guidelines range, on the basis of a prior conviction that was older than 15 years, where the increase was premised on unreliable hearsay information as to which no credibility finding was made, despite well-grounded challenges by Davis to the informant's credibility and the reliability of his information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

# TABLE OF CITATIONS

**CASES:**

*Berger v. United States*, 205 U.S. 78 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Bollenbach v. United States*, 326 U.S. 607 (1946) . . . . . . . . . . . . . . . . . . . . 30, 34

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1991) (en banc) . . . . . . . 23

*Boyde v. California*, 494 U.S. 370 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Doyle v. Ohio*, 426 U.S. 610 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Drake v. Kemp*, 762 F.3d 1449 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . 43

*Gall v. United States*, 552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 45, 46

*Molina-Martinez v. United States*, 578 U.S. 189 (2016). . . . . . . . . . . . . . . . . . 46

*Peugh v. United States*, 569 U.S. 530 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018) . . . . . . . . . . . . . . . . . 28

*Sears v. United States*, 343 F.2d 139 (5th Cir. 1965) . . . . . . . . . . . . . . . . . . 23, 26

*Spivey v. Head*, 207 F.3d 1263 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 43

*United States v. Bankston*, 945 F.3d 1316 (11th Cir. 2019) . . . . . . . . . . . . . . . 17

*United States v. Baptiste*, 935 F.3d 1304 (11th Cir. 2019) . . . . . . . . . . . . . . 47, 48

*United States v. Bernal-Benitez*, 594 F.3d 1303 (11th Cir. 2010). . . . . . . . . . . 42

*United States v. Deason*, 965 F.3d 1252 (11th Cir. 2020). . . . . . . . . . . . . . . . . 17

*United States v. Dohan*, 508 F.3d 989 (11th Cir. 2007). . . . . . . . . . . . . . . . . . . 17

*United States v. Elkins*, 885 F.2d 775 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . 43

*United States v. Gonzalez*, 921 F.2d 1530 (11th Cir. 1991) . . . . . . . . . . . . . . . . 37

*United States v. Gordon*, 231 F.3d 750 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . 48

*United States v. Hands*, 183 F.3d 1322 (11th Cir. 1999) . . . . . . . . . . . . . . . 43, 44

*United States v. Johnson*, 980 F.3d 1364 (11th Cir. 2020) . . . . . . . . . . . . . . . . . . 47

*United States v. Joyner*, 882 F.3d 1369 (11th Cir. 2018) . . . . . . . . . . . . . . . . . . 31

*United States v. Kelly*, 888 F.2d 732 (11th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Knowles*, 66 F.3d 1146 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . 17

*United States v. Labarbera*, 581 F.2d 107 (5th Cir 1978) . . . . . . . . . . . . . . . . . . 44

*United States v. Lee*, 68 F.3d 1267 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . 18, 47

*United States v. Lively*, 803 F.2d 1124 (11th Cir. 1986) . . . . . . . . . . . . . . . 21, 23

*United States v. Lopez*, 590 F.3d 1238 (11th Cir. 2009) . . . . . . . . . . . . . . . 30, 31

*United States v. McDonald*, 935 F.2d 1212 (11th Cir. 1991) . . . . . . . . . . . . . . . 17

*United States v. McLain*, 823 F.2d 1457 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . 44

*United States v. Montano*, 398 F.3d 1276 (11th Cir. 2005) . . . . . . . . . . . . . . . . 23

*United States v. Moran*, 778 F.3d 942 (11th Cir. 2015) . . . . . . . . . . . . . . . . . . . 18

*United States v. Pugh*, 515 F.3d 1179 (11th Cir. 2008) . . . . . . . . . . . . . . . . . . . 46

*United States v. Sorondo*, 845 F.2d 945 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . 40

*United States v. Sosa*, 777 F.3d 1279 (11th Cir. 2015) . . . . . . . . . . . . . . . . . . . 43

*United States v. Stubbs*, 944 F.2d 828 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . 37

*United States v. Vazquez*, 53 F.3d 1216 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . 17

*United States v. Young*, 470 U.S. 1 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

**STATUTORY AND OTHER AUTHORITY:**

U.S. Const., amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 43, 44

U.S. Const., amend. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 43, 44

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

18 U.S.C. § 3742(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

21 U.S.C. § 841 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

U.S.S.G. § 2D1.1(c)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

U.S.S.G. § 2D1.1, comment. (n.8(D)) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 46

U.S.S.G. § 4A1.1, comment. (n.1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

U.S.S.G. § 6A1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **47**

# STATEMENT OF JURISDICTION

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231, because the defendant was charged with offenses against the laws of the United States. The court of appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which gives the courts of appeals jurisdiction over all final decisions of the district courts of the United States, and 18 U.S.C. § 3742(a), which authorizes the defendant's appeal of his sentence. The notice of appeal was timely filed on September 3, 2022, from the final judgment and commitment order entered on August 23, 2022, that disposes of all claims between the parties to this cause.

# STATEMENT OF THE ISSUES

I.     Whether Davis's conspiracy conviction must be vacated where the district court failed to instruct the jury that a defendant cannot conspire with a government informant, and the majority of the evidence against Davis focused on his interactions with a government informant.

II.    Whether Davis's conspiracy conviction must be vacated where the district court's response to a jury question failed to dispel confusion about whether a government informant can enter into an illegal conspiracy.

III.    Whether the cumulative effect of multiple trial errors, consisting of repeated improper and prejudicial comments on the defendant's right to silence and repeated inadmissible and prejudicial opinion testimony and prosecutorial comments, in combination with core instructional and related errors, impaired the fairness of Davis's trial, contrary to the guarantees of the Fifth and Sixth Amendments.

IV.    Whether the district court erred as a matter of law when it increased Davis's sentencing guidelines range based on hearsay information provided by a government informant without making a finding about the informant's credibility, although Davis made well-grounded challenges to the credibility of the informant and the reliability of the hearsay information.

## STATEMENT OF THE CASE

## Course of Proceedings and Disposition in the District Court

Appellant Roshawn Davis was charged by superseding indictment with conspiring with unidentified persons between January 23 and October 21, 2020, to possess controlled substances with intent to distribute, in violation of 21 U.S.C. § 846 (Count 1), and with nine counts of possessing controlled substances with intent to distribute, in violation of 21 U.S.C. § 841 (Counts 2-10). DE:46:1-7.

Davis exercised his right to a jury trial. DE:136; DE:142; DE:143; DE:144. In its jury charge, the district court included a general instruction about the elements of the conspiracy charge, DE:144:13-14, but it did not instruct the jury that a government agent cannot be a conspirator. During its deliberations, the jury sent a question to the district court asking whether the informant's status as a government agent should affect their consideration of the conspiracy charge. DE:144:93. Over Davis's objection, the district court chose not to respond directly to the jury's question and instead responded by telling the jury to refer back to the district court's previous instructions about conspiracy. DE:144:93-99.

Before and during the sentencing hearing, Davis objected to the drug quantity used to calculate the base offense level, DE:109:1-4; DE:141:7-14, 21-23, 41, as well as to the inclusion of a prior conviction that was more than 15 years old in calculating

his criminal history category, DE:109:7, DE:141:52-53. The district court overruled the objections. DE:141:43, 54. It imposed a 135-month term of imprisonment. DE:141:70. Defense counsel renewed Davis's objection to the calculation of the base offense level. DE:141:71-72.

Davis filed a timely notice of appeal. DE:128.

## Statement of Facts

### *Trial Evidence*

The evidence against appellant Roshawn Davis was presented over the course of three trial days. DE:136; DE:142; DE:143. The evidence opened with testimony about an investigation into the drug trafficking activities of an individual named Roderick White. DE:136:31-32. Federal agents used a confidential source to make a series of drug purchases from White between August 2019 and January 2020. DE:136:31. On January 23, 2020, agents executed a search warrant at White's home and found evidence of drug trafficking. DE:136:32; DE:142:172-73. Agents leveraged their evidence against White to recruit him to work as a government informant. DE:136:32.

On that same date, acting on behalf of law enforcement, White initiated contact with appellant Davis. DE:136:33, 42-43. FBI Special Agent Richard Lee testified at length about numerous phone calls between White and Davis on that date.

DE:136:42-55. Recordings of those phone calls were played for the jury. *Id*. Agent Lee then testified about steps taken to prepare for a meeting between White and Davis, including gathering at a staging area to search White's person and his vehicle for drugs, providing him with money and recording devices, and putting officers in place to conduct surveillance. DE:136:55-57, 65-66. Agent Lee also testified in detail about the ensuing meeting between White and Davis in a restaurant parking lot. DE:136:61-69. The government supplemented this testimony with surveillance photographs and an audio recording of the meeting. DE:136:61-69. Agent Lee next testified about White's return trip to the staging area while under surveillance, another search of White's person and his vehicle, and the agents' recovery from White of substances they suspected to be heroin and fentanyl. DE:136:70-75. Finally, Agent Lee testified about five phone calls between White and Davis later that day in which they allegedly discussed their preceding transaction. DE:136:75-83. Recordings of those calls were played for the jury. *Id*.

Detective Sergio Pagliery testified about the collection and handling of the drugs White turned over to agents after his meeting with Davis. DE:143:19-24; GX 6. FBI chemist Karen Bromfield identified the drugs as 13.96 grams of a heroin/fentanyl mixture and 28.24 grams of fentanyl. DE:143:79-80.

Over the course of the trial, agents testified at length about numerous additional meetings that occurred between White and Davis on January 30, March 3, March 4, March 18, August 13, September 22, and October 19, 2020, as well as the extensive phone calls and procedures that preceded and followed the meetings. DE:136:83-105, DE:142:12-34, DE:142:35-58, DE:142:114-29, DE:142:150-53, DE:142:153-64, DE:142:204-21, DE:143:153-72. In addition to the types of evidence presented about the events of January 23, which did not include video recordings, the government showed video recordings of meetings between White and Davis on other dates, and agents testified about the events depicted in the video recordings. DE:142:169, *see also* DE:136:89-90, DE:136:96-102, DE:142:18, DE:142:20-29, DE:142:38, DE:142:41-44, DE:142:48-53, DE:142:116-22, DE:142:124-29, DE:142:157-61, DE:142:210-16, DE:142:218-19, DE:143:161, DE:143:167-69. Detective Pagliery testified about the collection and handling of the substances White turned over to agents after these additional meetings with Davis. DE:143:24-43; GX 18, 23, 23A, 27, 36, 46, 46A, 52. FBI chemist Bromfield testified about the types and weights of substances recovered from White: 45.28 grams of crack cocaine and 14.66 grams of a heroin/fentanyl mixture on January 30; 20.51 grams of fentanyl on March 3; 13.81 grams of fentanyl and 24.41 grams of crack cocaine on March 4; 55.79 grams of fentanyl on March 18; a 0.27-gram sample of fentanyl and 27.75 additional grams of

5

fentanyl on August 13; 27.84 grams of fentanyl and 87 grams of an inert substance (which agents initially believed to be heroin) on September 22; and 3 grams of fentanyl on October 19.  DE:143:80-92, 95-96.

On August 13, 2020, agents discovered an inventory of new shoes and clothing in White's passenger seat and trunk when they searched his vehicle in connection with a meeting with Davis, during which White sought to sell Davis shoes. DE:142:50, 51-53, 178.  White claimed he had purchased the shoes and clothing at a retail store and planned to resell them for a profit.  DE:142:51.  The agents did not question this explanation and did not ask to see receipts.  DE:142:179-80.  Agent Lee testified that if the FBI had concluded that White was trafficking in stolen shoes, they would not be able to continue using White as an informant to investigate Davis. DE:142:180.

On October 21, 2020, agents executed a search warrant at Davis's home. DE:142:235.  They expected to find a "brick" of fentanyl because they had observed Davis carrying a brick-shaped item into his house.  DE:142:150, 164-66, 235-43. Instead, they found a brick-shaped item composed of an inert substance that contained no fentanyl.  DE:142:190-91, 237-39; DE:143:56-58.  Agents found only a small quantity of suspected narcotics.  DE:142:239-42.  Davis was arrested on this date.  DE:142:166-67.

In January of 2021, while White remained under agreement with the FBI as a government informant, he was arrested in South Carolina for trafficking drugs. DE:136:41; DE:142:181-82.

While the majority of the trial was consumed by testimony about interactions between White and Davis, the government presented some evidence about Davis's interactions with others. Agent Lee identified six persons whom he "suppose[d] it would be fair to refer to ... as unindicted co-conspirators in this instance": Jeff Hayden, Ernest Grissom, Betsy Mieses, Darrington Horne, Tracy Battle, and Curtis Bridges. DE:142:73. The government introduced evidence of some recorded phone conversations Davis had with these persons; some written communications, images, and recordings extracted from seized phones; and images captured by a pole camera of a meeting between Davis and Grissom. DE:142:65-111, 129-49; DE:143:138-43, 172-80. During the meeting between Davis and Grissom, Davis gave Grissom something after agreeing in a phone call to provide Grissom with "a seven." DE:142:93-98. The government also introduced a recording of a phone call between Davis and someone named Janie Howard during which Howard requested "30." DE:142:88. It then showed pole camera images of a meeting where Davis handed something to Howard. DE:142:88-91.

None of Davis's alleged unindicted co-conspirators was arrested. DE:142:183-86. Also, there was no evidence that authorities seized drugs traceable to Davis from any of these persons. *See* DE:142:194-95 (no drugs were found in the possession of Horne, Hayden, or Bridges).

### *Conspiracy Instruction*

The district court's charge to the jury included an instruction about the elements of the conspiracy charge:

> The Defendant can be found guilty only if all the following facts are proved beyond a reasonable doubt.
>
> Number one, two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess with intent to distribute heroin, cocaine base (crack cocaine), or fentanyl.
>
> Two, the Defendant knew the unlawful purpose of the plan and willfully joined in it.
>
> And three, the object of the unlawful plan was to possess with intent to distribute 100 grams or more of heroin, 40 grams or more of fentanyl, or a mixture and substance containing a detectable amount of cocaine base (crack cocaine).
>
> A person may be a conspirator even without knowing all the details of the unlawful plan or the names and identities of all of the other alleged conspirators. If the Defendant played only a minor part of the plan, but had a general understanding of the unlawful purpose of the plan, and willfully joined in the plan on at least one occasion, that is sufficient for you to find the Defendant guilty.

But simply being present at the scene of an event, merely associating with certain people in discussing common goals and interests, does not establish proof of a conspiracy. Also, a person who does not know about a conspiracy, but happens to act in a way that advances some purpose of one, does not automatically become a conspirator.

DE:144:13-14. The district court did not instruct the jury that a government agent cannot be a conspirator. *Id.*

### *Closing Arguments*

In the government's principal closing argument, the prosecutor argued that Davis's negotiation with informant White for a sale of heroin and his subsequent sale of an inert substance to White instead of heroin could be part of the charged conspiracy. DE:144:43. Defense counsel objected and stated, "This is an improper statement. He can't conspire with an agent of the Government." DE:144:43. The district court responded, "Ladies and Gentlemen, the Court has already instructed you on the law with regard to a conspiracy. You are to follow the law that the Court instructs you on." DE:144:43.

Later in his argument, the prosecutor made these remarks:

Did the defendant know this plan and did he join it? Time and again, you see him talk about one and one, about dog, about boy, about the white. And each time he provides a drug [to White] that matches that description.

You heard him talk about selling cars with White at one point, and they used the word "cars." When he's talking about drugs, he uses dog, boy, white, fetty, fent. He knows these are drugs. He knows it's illegal. He's selling drugs because he's a drug dealer. And he joined it. He joined it at least nine different times [in making agreed sales to White], and again and again on the wire, and untold times beyond that.

DE:144:53-54.

Defense counsel stated during his closing argument that White was acting as an agent of the government and that no person can conspire with an agent of the government. DE:144:65. Defense counsel also argued that the government's efforts to prove that Davis conspired with other persons identified by the government was weak and could not support a conspiracy conviction. DE:144:65-68, 71-72. Defense counsel noted, for example, that none of the other persons identified by the government was arrested or charged with a crime. DE:144:65.

In the government's rebuttal closing argument, the prosecutor acknowledged, "Defense counsel's right. [Davis] can't conspire with Mr. White. Mr. White was acting as an agent of the Government." DE:144:77.

### *Jury Question*

During its deliberations, the jury sent the district court a note containing a question: "'It was mentioned Mr. White is not considered a conspirator, as he was working with the FBI. Because the substances presented in evidence were provided

by Mr. White, does this affect Count 1?'" DE:144:93.[1] Count 1 was the conspiracy charge against Davis. DE:46:1-2. The "substances presented in evidence," DE:144:93, were the substances White turned over to the agents after his meetings with Davis.

The prosecutor asked the district court to "refer [the jury] back to the conspiracy count of the jury instructions they already have." DE:144:93. Although defense counsel initially agreed to this approach, DE:144:94, he promptly altered his position and asked the district court to tell the jury that "Mr. White is, in fact, the cooperating witness [sic], and that a cooperating witness can never ... be part of a conspiracy." DE:144:95. The government opposed this request. DE:144:95-96. Defense counsel argued that the jury's question went to the heart of the matter and that any confusion should be eliminated by telling the jury that "a cooperating witness is an agent of the Government and can never be a co-conspirator." DE:144:96. While the prosecutor expressly stated he did not "disagree with that as a statement of law," he thought the requested response would give the impression that there could not be a conspiracy here. DE:144:96-97.

---

[1]The jury note and the written response the district court provided to the jury are not in the record.

The district court stated, "I believe that the law related to what is a conspiracy, and who can be considered part of the conspiracy, has already been included in the instructions that were provided and were read by the Court." DE:144:98. Absent an agreement by the parties, the district court suggested it would respond to the jury question by saying, "The Court has provided you with the instructions on the law to be followed, and all the evidence has been received. You are to rely on the law and consider the evidence." DE:144:98. At the government's urging and over the objection of the defense, the district court provided that answer to the jury in writing. DE:144:98. After further deliberations, the jury returned guilty verdicts as to each count in the indictment. DE:96.

### Sentencing Proceedings

Prior to the sentencing hearing, a U.S. probation officer prepared a presentence investigation report (PSI) in which she summarized Davis's offense conduct (*i.e.*, the conduct alleged in the indictment), purported to describe relevant conduct, and calculated a sentencing guidelines range. DE:105.

The probation officer recommended holding Davis accountable for 58.12 grams of heroin, 332.64 grams of fentanyl, 77.44 grams of cocaine, and 257 grams of crack cocaine. DE:105, ¶ 22. Included in this total were the drugs attributed to the offenses of conviction, *i.e.*, the drugs that informant Roderick White handed over to

law enforcement officers after his interactions with Davis: 28.62 grams of heroin, 179.64 grams of fentanyl, and 69.49 grams of crack cocaine. DE:105, ¶ 21. Also included in this total were drugs that informant White sold to an unidentified confidential source before his arrest and before the dates of the offenses charged against Davis: 29.5 grams of heroin, 153 grams of fentanyl, 188 grams of crack cocaine, and 77.44 grams of cocaine. DE:105, ¶¶ 8, 21. Based exclusively on statements attributed to White, the probation officer alleged that White had purchased the drugs he sold to the unidentified confidential source from Davis. DE:105, ¶ 9.

Based on these combined drug amounts, which corresponded to 1,822.96 kilograms of converted drug weight (*see* U.S.S.G. § 2D1.1, comment. (n.8(D))), the probation officer assigned Davis a base offense level of 30. DE:105, ¶ 31. No adjustments applied to the offense level.[2] Combined with Davis's criminal history category of IV, a sentencing guidelines range of 135-168 months resulted. DE:141:56; U.S.S.G. Sentencing Table.

The drug quantities attributed to Davis's offenses of conviction corresponded to 718.67 kilograms of converted drug weight, which would yield a base offense level of 28. DE:141:22; U.S.S.G. § 2D1.1, comment. (n.8(D)); U.S.S.G. § 2D1.1(c)(6).

---

[2]The probation officer recommended the application of two enhancements to Davis's offense level, but the district court sustained Davis's objections to the enhancements. DE:105, ¶¶ 32, 35; DE:141:14-21, 44-51.

Combined with Davis's criminal history category of IV, a sentencing guidelines range of 110-137 months would have resulted. U.S.S.G. Sentencing Table.

Davis objected to the calculation of his base offense level. DE:109:1-4; DE:141:7-14, 21-23, 41. He argued he should be accountable only for the drugs linked to the offenses of conviction. DE:109:3-4; DE:141:21-23. He asked the district court to disregard the drugs White previously had sold to a confidential source, because the government failed to provide reliable evidence to support a finding that Davis had provided those drugs to White. DE:109:1-2; DE:141:7-14, 41.

In addition, Davis objected to his criminal history category as premised erroneously on the probation office's counting of three points for a prior conviction that was older than the 15-year limit for scoring prior convictions under the guidelines, which resulted in an improperly elevated criminal history of category IV, rather than category III, and a corresponding improperly elevated sentencing guidelines range. PSI at ¶¶ 48, 54; DE:109:7-8.

During the sentencing hearing, FBI Special Agent Justin Carsten testified on behalf of the government. DE:141:29-39. He testified that White had told agents on multiple occasions that Davis was the only supplier of drugs White had sold to the confidential source. DE:141:31, 32. It appears that none of these statements was made in Agent Carsten's presence. *See* DE:141:30 (specifying that two other agents

14

spoke to White when White first asserted that Davis had supplied the drugs, and Agent Carsten was not present).

Agent Carsten testified that White's phone records were reviewed, and they were consistent with Davis being White's sole or primary source of supply. DE:141:32, 34. Recordings were not made of White's phone calls, DE:141:35, and the government did not introduce White's phone records. Neither did Agent Carsten identify any specific dates or times of phone calls reflected in White's phone records or explain how the timing of any phone calls corresponded to the dates of drug sales. When asked to elaborate on investigative efforts relating to phone records, Agent Carsten referred to the wire intercepts and related telephone analyses of Davis's phone records that were conducted with respect to the subsequent investigation of Davis. DE:141:33-34. Agent Carsten also referred again to analyses of White's phone records but again identified no specific calls that would corroborate White's statement that Davis provided all (or any) of the drugs White sold to a confidential informant before the dates of Davis's indictment. DE:141:34.

Agent Carsten acknowledged on cross-examination that on August 13, 2020, while searching White's vehicle in connection with one of White's meetings with Davis, agents discovered that White had a trunk-load and car-full of shoes that he claimed he had purchased at a retail store for the purpose of reselling them.

DE:141:38. Agent Carsten disclaimed any knowledge about the means by which Davis obtained the shoes. DE:141:38 ("I have no idea where he got shoes or did not get shoes."). Agent Carsten also acknowledged that White was arrested in South Carolina in January 2021 for selling drugs, despite his cooperation agreement with the FBI. DE:141:38-39. Agent Carsten testified he was not surprised about White's drug trafficking because "[h]e previously had sold drugs." DE:141:39.

After hearing testimony and argument, the district court overruled Davis's objection to his base offense level, as well as his objection to the increase of his criminal history category on the basis of a prior conviction that was older than the 15-year limitation under the sentencing guidelines. DE:141:43, 54. The district court made no finding about White's credibility or the reliability of the hearsay statements attributed to him. DE:141:42-43.

# Standards of Review

I.     When an appellant challenges the district court's failure to deliver a jury instruction that he did not request at trial, review is for plain error. *United States v. Deason*, 965 F.3d 1252, 1269 (11th Cir. 2020); *United States v. Knowles*, 66 F.3d 1146, 1157 (11th Cir. 1995); *United States v. Vazquez*, 53 F.3d 1216, 1221 (11th Cir. 1995). Relief should be granted on plain error review when "(1) an error occurred; (2) the error was obvious; (3) it affected [the defendant's] substantial rights in that it was prejudicial and not harmless; and (4) it seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Bankston*, 945 F.3d 1316, 1318 (11th Cir. 2019) (internal quotation marks omitted).

II.     A district court's response to a jury's question is reviewed for abuse of discretion. *United States v. McDonald*, 935 F.2d 1212, 1222 (11th Cir. 1991).

III.     The total prejudicial effect of the trial errors must be weighed *de novo* on appeal to determine if cumulative error warrants reversal. *See United States v. Dohan*, 508 F.3d 989, 993 (11th Cir. 2007).

IV.     When a defendant asserts a viable challenge to the reliability of hearsay statements made by a government informant, an argument that the district court failed to make specific findings about the informant's credibility before using the statements to determine the defendant's sentencing guidelines range presents an error of law.

*United States v. Lee*, 68 F.3d 1267, 1276 (11th Cir. 1995). Errors of law are subject to *de novo* review. *E.g., United States v. Moran*, 778 F.3d 942, 959 (11th Cir. 2015) ("This Court reviews *de novo* the district court's interpretation of the guidelines and its application of guidelines to the facts.").

## SUMMARY OF THE ARGUMENT

I.     Davis's conspiracy conviction must be vacated because the district court failed to instruct the jury that a defendant cannot conspire with a government informant, and the majority of the evidence against Davis focused on his interactions with a government informant.  The government presented exhaustive, detailed evidence of communications and meetings between Davis and government informant Roderick White.  The government presented much briefer testimony about other alleged conspirators.  Despite the overwhelming evidentiary emphasis on informant White and the obvious risk that the jury would view him as a conspirator, the district court never instructed the jury that Davis could not conspire with a government agent. This glaring omission caused jury confusion about the effect White's status should have with respect to the conspiracy charge.  It is highly likely that the district court's failure to instruct the jury that Davis could not be convicted of conspiring with a government informant contributed to the jury's guilty verdict on the conspiracy

offense.  Davis's conspiracy conviction must be vacated in light of the prejudicial instructional error.

II.     Alternatively, Davis's conspiracy conviction must be vacated because the district court failed to dispel the jury's confusion on a matter essential to its deliberations.  The jury posed a question to the district court about how Roderick White's status as a government informant should affect their deliberations on the conspiracy charge.  The district court should have eliminated the jury's confusion by explaining that a defendant cannot be convicted of conspiracy based on an agreement with a government informant.  Over Davis's objection, the district court declined to answer the jury's question directly and instead simply referred the jury back to the original jury instructions.  The district court's response to the jury's question did nothing to dispel the confusion, because the original jury instructions did not address whether a defendant could conspire with a government informant.  Because the district court failed to dispel the jury's confusion about whether a government agent can enter into an illegal conspiracy, the conspiracy conviction is invalid.

III.     The multiple errors at Davis's trial, viewed cumulatively, deprived him of a fair trial, regardless of whether the errors, considered separately, compel reversal.  A key government agent witness repeatedly commented on the defendant's silence, testifying that Davis had refused to speak with law enforcement.   This

constitutionally impermissible testimony was accompanied by the same agent's repeated improper and prejudicial opinion testimony that labelled and disparaged the defendant as a sophisticated drug dealer. These improprieties were compounded by additional instances of impermissible opinion testimony by law enforcement witnesses and further impermissible prosecutorial comments in closing argument, all of which skewed the jurors' ability to fairly evaluate the evidence. These errors, viewed together with the misinstruction and confusion of the jury regarding the applicable law, as set forth in Issues I and II, *supra*, were not harmless and impaired Davis's right to a fair trial.

IV.     The district court erred as a matter of law when it relied on hearsay information provided by a government informant to increase Davis's sentencing guidelines range without making a finding about the informant's credibility or the reliability of his information. When determining Davis's base offense level, the district court relied on statements informant Roderick White made to unidentified law enforcement agents. Drugs that White attributed to Davis more than doubled the quantity of drugs for which Davis was held accountable. Although Davis made a well-grounded challenge to the reliability of White's hearsay statements, the district court accepted White's statements as true without making a finding regarding White's credibility. Consequently, Davis's sentencing guidelines range was increased based

on unreliable hearsay information. In addition, the district court's increase of Davis's criminal history on the basis of a prior conviction that was older than 15 years, exceeding the criminal history limitations of the sentencing guidelines, was improper and resulted in a corresponding increase of Davis's sentencing guidelines range, where the criminal history increase was likewise premised on unreliable hearsay information provided by the informant as to which no finding of credibility was made with regard to purported relevant conduct outside of the indictment period. For these reasons, Davis's sentence therefore must be vacated, and he must be resentenced.

# ARGUMENT AND CITATIONS OF AUTHORITY

I.  **DAVIS'S CONSPIRACY CONVICTION MUST BE VACATED WHERE THE DISTRICT COURT FAILED TO INSTRUCT THE JURY THAT A DEFENDANT CANNOT CONSPIRE WITH A GOVERNMENT INFORMANT, AND THE MAJORITY OF THE EVIDENCE AGAINST DAVIS FOCUSED ON HIS INTERACTIONS WITH A GOVERNMENT INFORMANT.**

Davis's conspiracy conviction must be vacated in light of the district court's plain, prejudicial error in not instructing the jury that a government informant cannot be a conspirator. Davis was charged with participating in a drug conspiracy and with committing several substantive drug offenses during the conspiracy. DE:46:1-7. The indictment did not identify any other conspirator. DE:46:1-2. The government presented exhaustive, detailed evidence of communications and meetings between Davis and government informant Roderick White. After each of several meetings between White and Davis, White delivered illegal drugs to federal agents. *See* Statement of Facts, Trial Evidence, above. The government presented much briefer testimony about other alleged conspirators. *Id*. Despite the overwhelming evidentiary emphasis on informant White and the obvious risk that the jury would view him as a conspirator, the district court never instructed the jury that Davis could not conspire with a government agent. This glaring omission caused jury confusion

about the effect White's status should have with respect to the conspiracy charge. In the end, the jury found Davis guilty on the conspiracy charge.

"[I]t is well-settled that a person cannot conspire with a government informer who secretly intends to frustrate the conspiracy." *United States v. Lively*, 803 F.2d 1124, 1126 (11th Cir. 1986); *see also United States v. Montano*, 398 F.3d 1276, 1284 (11th Cir. 2005) ("[I]t is impossible, of course, for Montano to conspire with the government."); *United States v. Kelly*, 888 F.2d 732, 740 (11th Cir. 1989) ("[I]t is legally impossible to conspire with a government agent or informant who actually aims to frustrate the conspiracy."); *Sears v. United States*, 343 F.2d 139, 142 (5th Cir. 1965) ("[A]s it takes two to conspire, there can be no indictable conspiracy with a government informer who secretly intends to frustrate the conspiracy.").[3]

Where the evidence presents a risk that the jury may convict a defendant of conspiracy based on his interactions with a government informant, the jury should be instructed that a defendant cannot be convicted of conspiring with a government agent. *Sears*, 343 F.2d at 142 (a cautionary instruction should have been given where the jury may have believed it could convict the defendant of conspiracy based simply on a belief that he made an illegal agreement with an informant); *see also Lively*, 803

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1991) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

F.2d at 1126 (where the jury may have relied on the defendant's interactions with a former conspirator after the conspirator became an informant, the jury should have been instructed that an informant cannot be a conspirator).

Here, the district court never instructed the jury that Davis could not be convicted based on an agreement with a government informant. While the district court instructed the jury generally about the elements of the conspiracy charge, the instruction provided no guidance about how the jury should consider White's role as a government agent when deliberating on the conspiracy offense. DE:144:13-14. The absence of such guidance presented a clear risk that the jury would find Davis guilty of conspiracy based on his interactions with White.

Davis's numerous interactions with informant White formed the basis for the majority of the evidence presented at trial. Witnesses testified about dozens of phone calls between Davis and White and opined that the calls were made for the purpose of arranging drug sales by Davis to White or to discuss sales after they were made. Recordings of those calls were played for the jury. Also, multiple witnesses testified in exhaustive detail about how White and his vehicle were searched before and after numerous meetings with Davis and about surveillance of White before, during and after his meetings with Davis. The jury also heard abundant testimony about witnesses' observations of the meetings themselves, and they heard and saw audio

and video recordings of those meetings. DE:136:42-83, DE:136:84-105, DE:142:12-34, DE:142:35-58, DE:142:114-29, DE:142:150-53, DE:142:153-64, DE:142:204-21, DE:143:153-72. Witnesses also testified about how drug evidence was retrieved from White and about the chain of custody for the drug evidence. DE:143:19-43. Finally, a chemist testified about the types and quantities of drugs retrieved from White, and the drugs were admitted in evidence. DE:143:79-92, 95-96. Through these many witnesses, the government regaled the jury with a detailed, easy-to-follow story of an ongoing relationship between Davis and White that was centered on a series of drug transactions.

The evidence the government presented about other potential conspirators was brief, weak, and disjointed. A government witness testified in conclusory fashion that several other persons (Jeff Hayden, Ernest Grissom, Betsy Mieses, Darrington Horne, Tracy Battle, and Curtis Bridges) could be considered as unindicted co-conspirators. DE:142:73. To support its claim of conspiratorial links between these persons and Davis, the government offered sparse evidence of phone conversations; written communications, images, and recordings extracted from seized phones; and images captured by a pole camera. DE:142:65-111, 129-49; DE:143:138-43, 172-80. To the extent that evidence linked these persons to illegal activities involving Davis, it was far weaker and much more nuanced than the evidence of the transactions between

Davis and White. None of the persons named by the government as conspirators was arrested. DE:142:183-86. Also, no drugs linked to Davis were found in the possession of any of these alleged co-conspirators. In the absence of an instruction precluding the jury from viewing the government informant as a conspirator, the sheer bulk of the evidence linking Davis and White presented a strong and obvious risk that the jury would rely on their relationship to convict Davis of the conspiracy offense. Under these circumstances, the district court obviously erred in not cautioning the jury against convicting Davis of conspiracy based on agreements between White and Davis.

In *Sears*, 343 F.2d at 141, the former Fifth Circuit concluded there was sufficient evidence to connect the defendant to a conspiracy with two co-conspirators who were named in the indictment. Nevertheless, the Court reversed the defendant's conspiracy conviction. The government's case prominently featured evidence about an agreement the defendant had made with an informant who was not named in the indictment, and the district court denied the defendant's request for an instruction cautioning the jury that the defendant could not be convicted based solely on his agreement with the informant. *Id*. at 142. The Court granted relief because the jury may have believed it could convict the defendant based solely on a finding that the defendant had entered into an agreement with the informant.

The same problem compels relief in this case. Given the extensive evidence about conversations and meetings between White and Davis, it is highly likely that the district court's failure to instruct the jury that Davis could not be convicted of conspiring with a government informant contributed to the jury verdict on the conspiracy offense.

Davis's defense to the conspiracy charge was seriously impeded by the jury's lack of guidance about the impact of White's status. The jury was confused. This confusion was manifested by the jury's question about how White's status as a government informant should affect their deliberations on the conspiracy count. DE:144:93. Unfortunately, the district court chose not to clear up that confusion.

Davis asked the district court to eliminate the jury's confusion by explaining that "a cooperating witness is an agent of the Government and can never be a co-conspirator." DE:144:96. The prosecutor expressly stated he did not "disagree with that as a statement of law." DE:144:96. He nevertheless urged the district court not to provide the requested guidance on the grounds that it might give the jury the impression that there could not be a conspiracy here. DE:144:96. In other words, the prosecutor feared that a correct understanding of the law would lead to an acquittal on the conspiracy count. At the government's urging, the district court did not cure the glaring omission in the jury charge. Instead, it simply directed the jury to rely on

the inadequate instructions they already had received. DE:144:98-99. Having received no meaningful answer to its question, the jury proceeded with its deliberations. The jury later asked the district court what would happen if it did not come to agreement on some counts. DE:144:99. After being told to continue its deliberations, the jury returned guilty verdicts on all counts of conviction, including the conspiracy charge. DE:144:100-06. There is a reasonable probability that Davis would have been acquitted of the conspiracy charge if the jury had understood the impact of White's status as a government agent. Thus, Davis was prejudiced by the district court's failure to instruct the jury that a government agent cannot be a conspirator. *See Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904-05 (2018) (to show that a plain error substantially affected the defendant's rights, he must show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different") (internal quotation marks omitted).

If the district court's error is left uncorrected the fairness, integrity, and public reputation of the judicial proceedings will be adversely affected. The district court not only made a prejudicial plain error that confused the jury, but it also chose not to cure that error when the jury expressed its confusion. By persisting in the error when given an opportunity to correct it, the district court rendered the trial unfair and undermined the integrity and public reputation of the proceedings.

Davis's conspiracy conviction must be vacated in light of this prejudicial instructional error.

## II. DAVIS'S CONSPIRACY CONVICTION MUST BE VACATED WHERE THE DISTRICT COURT'S RESPONSE TO A JURY QUESTION FAILED TO DISPEL CONFUSION ABOUT WHETHER A GOVERNMENT INFORMANT CAN ENTER INTO AN ILLEGAL CONSPIRACY.

During its deliberations, the jury sent a question to the district court, seeking guidance on how Roderick White's status as a government informant should affect their deliberations on the conspiracy count. DE:144:93.[4] Over Davis's objection, the district court declined to answer the jury's question directly. DE:144:93-99. Instead, it referred the jury back to the jury charge, stating, "The Court has provided you with the instructions on the law to be followed, and all evidence has been received. You are to rely on the law and consider the evidence." DE:144:98-99. This response did nothing to clear away the jury's confusion, because the original jury instructions did not address whether a defendant could conspire with a government informant.

The district court erred when it refused Davis's request to dispel the jury's confusion by giving a supplemental instruction. Defense counsel asked the district

_____

[4]According to the trial transcript, the note stated: "It was mentioned Mr. White is not considered a conspirator, as he was working with the FBI. Because the substances presented in evidence were provided by Mr. White, does this affect Count 1 [the conspiracy charge]?" DE:144:93.

court to instruct the jury "that Mr. White is, in fact, the cooperating witness [sic], and that a cooperating witness can never become part of a conspiracy or can never be part of a conspiracy." DE:144:95; *see also* DE:144:96 (defense counsel argued, "I think the question goes to the heart of...what I said, let there be no confusion, *a cooperating witness is an agent of the Government and can never be a co-conspirator*.") (emphasis added).

The district court squandered an opportunity to ensure that the jury had the tools it needed to reach a proper verdict. "When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946). To that end, binding precedent "affords district courts discretion to expand upon initial jury instructions when a jury question arises." *United States v. Lopez*, 590 F.3d 1238, 1253 (11th Cir. 2009).

Here, the district court took no action to dispel the jury's confusion. The district court simply referred the jury back to its original jury instructions, which did not address whether a defendant could be convicted of conspiring with a government informant. *See* DE:144:13-14, 98-99. Moreover, the jury already had heard those instructions before posing its question about White's status as a government informant. The district court's reference to the original instructions therefore provided no useful guidance to the jury. Indeed, by referring the jury to the original

instructions, the district court compounded its original instructional error, effectively telling jurors that there was no bar to their convicting the defendant of conspiring with a government informant.

While the district court has "considerable discretion regarding the extent and character of supplemental jury instructions," it abuses its discretion if its response to a jury question confuses the jury. *Lopez*, 590 F.3d at 1247-48. When reviewing the potential for confusion, this Court considers the entire jury charge, the evidence presented, and the arguments of counsel. *United States v. Joyner*, 882 F.3d 1369, 1375 (11th Cir. 2018). When viewed as a whole, the trial record reveals there were multiple causes for jury confusion, but no steps were taken to dispel that confusion.

The district court and the parties' lawyers gave the jury mixed messages about whether White could conspire with Davis, given White's status as a government informant. As for the district court, it declined on three occasions to give the jury any guidance on this issue. The first opportunity occurred when the district court delivered the jury charge. DE:144:13-14. While the district court described the elements of the conspiracy offense, it did not tell the jury whether a government informant could be a conspirator. *Id*. The second opportunity arose when defense counsel made an objection during the prosecutor's closing argument and stated, "[Davis] cannot conspire with an agent of the Government." DE:144:43. The district

court neither sustained nor overruled the objection. Instead of affirming the legal principle stated by defense counsel, the district court responded, "Ladies and Gentlemen, the Court has already instructed you on the law with regard to a conspiracy. You are to follow the law that the Court instructs you on." *Id*. The third opportunity arose during jury deliberations when the jury posed its question, specifically asking for guidance about the effect of White's status as a government agent on the conspiracy charge. DE:144:93. The district court declined to answer the question directly. DE:144:93-99. Again, it simply referred the jury back to the jury charge, DE:144:98-99, which did not contain an answer to the question posed.

The confusion was heightened by statements made by the lawyers during closing arguments. During the prosecutor's primary closing argument, he made statements that suggested White conspired with Davis. In one instance, the prosecutor described Davis's delivery of an inert substance to White after White and Davis allegedly had negotiated for the sale of 87 grams of heroin. DE:144:43. The prosecutor then argued that the negotiations between White and Davis and the ensuing delivery "can still be part of the conspiracy...." DE:144:43. In another instance, the prosecutor argued that Davis entered into a conspiratorial agreement by talking about drugs with White "[t]ime and again" and by selling drugs to White "at least nine different times." DE:144:53-54. Defense counsel sought to counter these

32

arguments during his closing argument by telling the jury that Davis could not conspire with a government agent. DE:144:64-65, 72-73. The prosecutor then acknowledged in his rebuttal argument that Davis could not conspire with White. DE:144:77.

The fact that the lawyers ultimately seemed to agree that a government informant could not be a conspirator did not eliminate the confusion created where the prosecutor also had suggested White could have participated in the conspiracy. In any event, "arguments of counsel generally carry less weight with a jury than do instructions from the court." *Boyde v. California*, 494 U.S. 370, 384 (1990). Indeed, Davis's jury was told to rely on the district court for instruction on the law. DE:144:8 ("You must follow the law as I explain it...."). Where the district court declined to provide any guidance to the jury on the legal principle mentioned in closing arguments, *i.e.*, that White was not considered a conspirator because he was working for the FBI, this omission contributed to the jury's confusion.

The sheer bulk of trial evidence describing discussions and meetings between White and Davis provided another source of confusion. The evidence about White and Davis's interactions formed a comprehensive, easy-to-follow story line about numerous drug negotiations and sales between the two men. On numerous occasions, White provided drugs to law enforcement agents that he allegedly had received from

Davis. The drugs turned over by White were the only controlled substances admitted in evidence that had an evidentiary link to Davis. The jury demonstrated its focus on this fact when it asked, "Because the substances presented in evidence were provided by Mr. White, does this affect Count 1?" DE:144:93.

Given the overwhelming evidentiary focus on interactions between White and Davis, the lawyers' mixed messages about whether White could participate in the conspiracy, and the omission of any helpful guidance from the district court, there was ample cause for the jury's confusion about how to view White's role in relation to the conspiracy charge. The district court abused its discretion when the jury "ma[de] explicit its difficulties" and the district court failed to "clear them away with concrete accuracy." *Bollenbach*, 326 U.S. at 612-13.

Because the district court failed to dispel the jury's confusion about whether a government agent can enter into an illegal conspiracy, Davis's conspiracy conviction must be vacated.

III. **THE CUMULATIVE EFFECT OF MULTIPLE TRIAL ERRORS, ENCOMPASSING REPEATED IMPROPER AND PREJUDICIAL COMMENTS ON THE DEFENDANT'S RIGHT TO SILENCE, PERVASIVE INADMISSIBLE AND DISPARAGING OPINION TESTIMONY, IMPROPER PROSECUTORIAL COMMENTS,**

**AND CORE INSTRUCTIONAL ERRORS, DEPRIVED THE**

**DEFENDANT OF A FAIR TRIAL, WARRANTING REVERSAL.**

The government's case was pervaded by inadmissible, prejudicial and constitutionally infirm evidence that disparaged the defendant as a sophisticated drug trafficker who refused to speak with law enforcement. Testimony from a key government agent repeatedly commented on the defendant's post-arrest silence and opined that the defendant was a savvy narcotics dealer, in addition to offering other improper opinions as to the facts and the law, all in derogation of the jury's role in evaluating the evidence. The prosecution exacerbated this improper testimony in closing argument by impermissibly offering a personal opinion as to the defendant's guilt, impugning and negating the defense, and mischaracterizing the law. All of these improprieties, viewed in combination with the misinstruction and misleading of the jury regarding the applicable law, as set forth in Issues I and II, *supra*, impaired the defendant's right to a fair trial and warrant reversal of the defendant's convictions.

**A. Repeated improper and prejudicial comments on the defendant's right to silence.**

Special Agent Richard Lee, testifying on behalf of the government, commented on, and disparaged, the defendant's silence in choosing not to cooperate and work with the prosecution:

> [Agent Lee:]  However, we didn't want the case to end there. *We wanted to work and cooperate with the Defendant. The Defendant chose not to,* which is a hundred percent his choice, but—.

DE:142:184 (emphasis added).  While this testimony, which elicited a sustained objection, was stricken and the witness admonished, DE:142:185, Special Agent Lee nevertheless persisted in making harmful statements that violated core constitutional protections of the defendant.  When asked about the circumstance that suspected fentanyl seized from the defendant's home was, in fact, not fentanyl or any other illicit substance, Special Agent Lee responded with yet another impermissible and prejudicial comment on the defendant's silence:

> Q.  Let me more specific, because you look confused.  When the home was raided of Mr. Davis, is it true that the FBI thought:
>
> "That's a brick.  That's a kilo of fentanyl that's sitting there"?  Wasn't that the original thought?
>
> A.  It is.  I personally thought that, based on the totality of circumstances.
>
> Q.  But it turned out it wasn't, right?
>
> A.  Correct.  That's one of the things that still puzzles me today.
>
> Q.  Right.  But that's why we have the crime lab and that's why we have testing done there, right?
>
> A.  *I would love to sit down and proffer with the Defendant.*

DE:142:191 (emphasis added).

36

The prejudice arising from key government agent testimony repeatingly commenting on the defendant's right to silence was incurable. As defense counsel stressed, any instruction to the jury would have unnecessarily highlighted the repeated harmful comments, making the jury give more attention to Davis's silence, without providing effective remediation. *See Doyle v. Ohio*, 426 U.S. 610, 617 (1976) (holding that the use for impeachment purposes of a defendant's silence, at the time of arrest and after receiving *Miranda* warnings, violates due process); *see also United States v. Gonzalez*, 921 F.2d 1530, 1549 (11th Cir. 1991) (a comment on a defendant's silence, for substantive or impeachment purposes, is constitutionally or otherwise prohibited). *Cf. United States v. Stubbs*, 944 F.2d 828, 834-35 n.10 (11th Cir. 1991) (concluding that absent use by the prosecution of a single comment on defendant's post-arrest silence, there was no *Doyle* violation). In defendant Davis's case, by contrast, the agent repeated and amplified his comments on the defendant's silence.

The district court itself, while denying the defense motion for a mistrial, recognized that Special Agent Lee's statement commenting on Davis's constitutional right to silence could result in prejudicing and misleading jurors:

> THE COURT: With regard to the second statement: 'I would have loved to have your client cooperate,' perhaps there could be an argument that the jury could be misled in thinking that the Defendant had some

37

type of a burden or an obligation to cooperate. And that certainly bleeds into his constitutional right once he's arrested. So I—I hesitate to share in the Government's request for a curative instruction when you're claiming the prejudice.

DE:142:258.

## B. Repeated inadmissible and prejudicial opinion testimony by government officers interfering in the jury's determination.

During the government's examination of Special Agent Lee, the government asked, and Lee responded, as follows:

> Q. All right. So you mentioned during the course of this investigation that a pole camera was used on Davis's home; is that correct?
> A. That's correct.
> Q. And what's the goal of using a pole camera like that to investigate someone like the Defendant?
> A. *The Defendant's a drug trafficker*. So he—

DE:142:84 (emphasis added). This testimony, elicited by the government, offered an improper categorical designation of the defendant on the key issue in the case—whether, in fact, the defendant was or was not a drug trafficker as alleged in the indictment. Moreover, the fact that this testimony was provided by a key government agent in the case was especially prejudicial. And these remarks were amplified by further improper testimony elicited from the same witness branding the defendant as "sophisticated" in relation to the police, resulting in a sustained

38

objection, DE:142:99, and offering an improper legal opinion characterizing six other individuals as "co-conspirators" in the case. DE:142:73.

All of the foregoing harmful comments impairing the defendant's fundamental rights to a fair trial and to silence were exacerbated by numerous other instances of inadmissible opinion testimony, including repeated testimony invading the province of jury as to the import of taped evidence. *See, e.g.*, DE:142:46 (Agent Lee: "[I]t sounds like the Defendant's insinuating that his supplier is there, and he's trying to hurry up to get the supplier out of town—", testimony that elicited an objection sustained by the court).

The prosecution's continual eliciting of improper opinion testimony from the government agent skewed the jury's ability to fairly evaluate the evidence. *See* DE:142:61-62 (defense counsel: "I have had objections here about invading the province of the jury. You know, the agent can testify, based on his knowledge and experience and expertise, as to what certain terms are. But when he starts to narrate what was meant by the Defendant, what was in his head—and the other one is White, because I know the Government is not going to call White. So as a means of getting into ... White's head and what he means, that's outside the agent's knowledge and it invades the province of the jury. They can draw conclusions. The agent's giving his opinion throughout. So that's my standing objection."). The courts have repeatedly

focused on the harm of shifting the jury's responsibility away from independent determination of the issues in a fair evaluation of the competing presentations and the substitution of the judgment of the prosecutor and prosecution witnesses. *See United States v. Sorondo*, 845 F.2d 945, 949 (11th Cir. 1988) (reversing where evidence of jury verdicts achieved by prosecution and its witness in prior cases was used to bolster reliance on the government's case; holding that under federal law, such fundamental error presented a manifest injustice and constituted plain error compelling reversal).

Notably, the prosecution did not contest the improper nature of its questioning eliciting state of mind opinions from a key government agent witness and stated that it would try to avoid engaging in such improper questioning going forward, DE:142:62-63 ("So I will, going forward, do my best to avoid any questioning that elicits commentary on what White was thinking. Of course that's not appropriate."). Despite that, the government persisted in such questioning as well as other related improprieties, resulting in sustained defense objections. DE:142:67 ("[Special Agent Lee:] So the Defendant was becoming increasingly wary of law enforcement's investigation. So he got rid of that cell phone and got a new one—MR. DONNELLY: Judge, I'm going to object to the opinion testimony of the agent. THE COURT: Sustained."); DE:142:99 ("[Prosecutor:] Now, importantly, what does the

Defendant ask about the law enforcement who stopped Grissom? [Special Agent Lee]: He asked whether it was regular police or undercovers. Q. Why is that an important question? A. It's important because it shows that the Defendant is sophisticated. MR. DONNELLY: Again, Judge, I'm going to object to this. This is opinion testimony. THE COURT: Sustained."); DE:142:75 ("[Special Agent Lee:] Curtis Bridges, also known as 'Curt,' based on my observations, I believe he was a peer of the Defendant. So—MR. DONNELLY: Judge, again, I'm going to object to the agent's opinion testimony. I'm objecting to—THE COURT: To the extent—the 'peer'—sustained."); DE:142:76 ("[Special Agent Lee:] Darrington Horne, also known as Brad, also known as 'Wig.' Again, someone that was a peer of the Defendant—MR. DONNELLY: Judge, again, I'm going to object—THE COURT: Sustained."); DE:142:77 ([Special Agent Lee: A. Jeff Hayden—Jeff Hayden was a partner and what appeared to be potentially sometimes a supplier to the Defendant. MR. DONNELLY: Judge, I'm going to object to this. I mean, if the Government is going to introduce evidence—but the agent giving his opinion as to who is who and what—THE COURT: Sustained."); ; DE:143:60 ("[Prosecutor:] Okay. So when there's a napkin or paper bag present, would the Defendant's fingerprints then have touched the plastic baggie or the napkin or brown paper bag on the outside? MR. DONNELLY: Judge, I—Judge, I object. That calls for a conclusion outside—THE

41

COURT: Sustained."); DE:143:64 ("[Prosecutor:] And knowing what you know about the Defendant, what did you expect that to be? A. Narcotics. MR. DONNELLY: Judge—Judge, I object. Outside the scope, and it's an improper statement by the witness. THE COURT: Sustained.").

In addition, the prosecutor in closing argument injected his own improper personal opinion regarding the defendant's culpability, *see* DE:144:22 (prosecutor: "*I know* that you're going to find him guilty.") (emphasis added), a practice which has long been condemned as improper. *See United States v. Young*, 470 U.S. 1, 18-19 (1985); *Berger v. United States*, 205 U.S. 78, 88 (1935); *see also United States v. Bernal-Benitez*, 594 F.3d 1303, 1315 (11th Cir. 2010) (prosecutor has duty to refrain from commenting on their personal view of defendant's guilt). In addition to this personal imprimatur of guilt in derogation of the jury's role, the prosecutor impugned and negated the theory of defense as "impossible," DE144:26, while also misleading and confusing the jury as to the applicable law. DE:144:43 (defense objection to government's closing argument that negotiations between Davis and the confidential informant and the ensuing delivery of drugs can "still be part of the conspiracy"; court overrules objection and, instead, refers jury to instructions which fail to clarify that defendant cannot conspire with an agent of the government such as the confidential informant in this case); DE:144:53-54 (prosecutor arguing in closing that

Davis entered into a conspiratorial agreement by discussing drugs with White "[t]ime and again" and by selling drugs to White "at least nine different times"). *See United States v. Sosa*, 777 F.3d 1279, 1297 (11th Cir. 2015) ("While a prosecutor can attack a defense theory during closing argument, he is not to misstate the law."); *Spivey v. Head*, 207 F.3d 1263, 1275 (11th Cir. 2000)("Improper prosecutorial arguments, especially misstatements of law, must be considered carefully because 'while wrapped in the cloak of state authority [they] have a heightened impact on the jury.'") (quoting *Drake v. Kemp*, 762 F.3d 1449, 1459 (11th Cir. 1985).

## C. The cumulative effect of the multiple trial errors impaired the fairness of the trial, contrary to Fifth and Sixth Amendment guarantees.

This Court has held that a combination of trial errors and prosecutorial misconduct can deny a defendant a fair trial, regardless of whether the individual errors require reversal on their own. *See United States v. Elkins*, 885 F.2d 775, 787 (11th Cir. 1987); *see also United States v. Hands*, 183 F.3d 1322, 1329, 1335 (11th Cir. 1999)(reversing the defendant's convictions where multiple errors occurred).

Viewed in combination with the infirmity of Davis's conspiracy conviction arising from misinstruction and confusion of the jury as to the applicable law, *see supra* at Issues I and II, impermissible and harmful testimony by a key law

43

enforcement witness commenting on Davis's right to silence and disparagingly branding him as a sophisticated drug trafficker, together with the additional instances of improper witness opinions elicited by the prosecutor, as well as improper comments by the prosecutor comprised of personal opinion, disparagement of the defense, and misstatement of the law, violated Davis's Fifth and Sixth Amendment rights and warrant reversal. *See Hands*, 184 F.3d at 1334 ("[W]e assess not the prosecutorial misconduct alone, but the combined impact of [all] errors on the verdict."; reversal warranted in light of cumulative prejudicial effect of multiple trial errors, which together violated the defendant's constitutional right to a fair trial); *United States v. McLain*, 823 F.2d 1457, 1462 (11th Cir. 1987) (even if some errors would not in and of themselves have warranted reversal, reversal is mandated where cumulative effect of errors "denied the defendants a fair trial"); *United States v. Labarbera*, 581 F.2d 107, 110 (5th Cir 1978)(same).

IV.    **THE DISTRICT COURT ERRED AS A MATTER OF LAW WHEN IT INCREASED DAVIS'S SENTENCING GUIDELINES RANGE BASED ON HEARSAY INFORMATION PROVIDED BY A GOVERNMENT INFORMANT WITHOUT MAKING A FINDING ABOUT THE INFORMANT'S CREDIBILITY, ALTHOUGH DAVIS MADE WELL-GROUNDED CHALLENGES TO THE CREDIBILITY OF THE INFORMANT AND THE RELIABILITY OF THE HEARSAY INFORMATION.**

**A. The district court improperly increased Davis's offense level, and corresponding sentencing guidelines range, based on hearsay information provided by a government informant without making a finding about the informant's credibility, as to which Davis made well-grounded challenges.**

When determining Davis's base offense level, the district court relied on unreliable double hearsay statements that informant Roderick White made to unidentified law enforcement agents. White reportedly claimed that Davis was White's sole provider of the drugs White had sold to a confidential source prior to the period of the charged conspiracy. The drugs attributed to Davis by White more than doubled the quantity of drugs for which Davis was held accountable. Although Davis made a well-grounded challenge to the reliability of White's hearsay statements, the district court accepted White's statements as true without making a finding regarding White's credibility. Davis's sentence therefore must be vacated, and he must be resentenced.

When determining a defendant's sentence, a district court must first accurately determine the defendant's sentencing guidelines range. *Peugh v. United States*, 569 U.S. 530, 536 (2013); *Gall v. United States*, 552 U.S. 38, 49 (2007). "A district court that 'improperly calculat[es]' a defendant's Guidelines range … has committed a

'significant procedural error.'" *Molina-Martinez v. United States*, 578 U.S. 189, 199 (2016) (quoting *Gall*, 552 U.S. at 51); *see also United States v. Pugh*, 515 F.3d 1179, 1189-90 (11th Cir. 2008) (the failure to correctly calculate the guidelines range constitutes reversible error). The district court inaccurately calculated Davis's guidelines range, because it held him accountable for exaggerated drug quantities in reliance on unreliable hearsay information.

Davis did not dispute at sentencing that he was responsible for all of the drugs linked to the offenses of conviction: 28.62 grams of heroin, 179.64 grams of fentanyl, and 69.49 grams of crack cocaine. DE:105, ¶ 21. These drug amounts correspond to a converted drug weight of 718.67 kilograms. DE:141:22. Davis objected to being held responsible for additional drugs that informant White reportedly claimed Davis provided to him prior to the dates of the charged offenses: 29.5 grams of heroin, 153 grams of fentanyl, 188 grams of crack cocaine, and 77.44 grams of cocaine. DE:109:1-4; DE:141:7-14, 21-23, 41; DE:105, ¶¶ 8, 9, 21. White sold these drugs to a confidential source before the investigation of Davis began. DE:105, ¶ 8. These additional drug amounts correspond to a converted drug weight of more than 1,000 kilograms. U.S.S.G. § 2D1.1, comment. (n.8(D)). In total, Davis was held accountable for 1,822.95 kilograms of converted drug weight. DE:105, ¶ 31.

Under appropriate circumstances, a district court can rely on hearsay information when determining a defendant's sentencing guidelines range. Specifically, hearsay evidence can support a sentencing decision "provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3; *United States v. Johnson*, 980 F.3d 1364, 1373 (11th Cir. 2020); *United States v. Baptiste*, 935 F.3d 1304, 1315 (11th Cir. 2019). Conversely, "[u]nreliable allegations shall not be considered." § 6A1.3, comment.

Davis challenged the reliability of White's statements attributing to Davis the drugs that White sold to a confidential source prior to the dates of the charged offenses. DE:109:1-2; DE:141:7-14, 41. Although Davis's challenge to White's credibility was strongly supported by the record, the district court failed to make a finding regarding the reliability of White's statements. *See* DE:141:41-43. Instead, the district court simply accepted White's statements as true. DE:141:41-43. The district court erred when it failed to make a finding regarding the reliability of White's hearsay statements.

In *United States v. Lee*, 68 F.3d 1267, 1275-76 (11th Cir. 1995), the government relied exclusively on a co-defendant's hearsay statements when attributing a large quantity of drugs to the defendant. Although the defendant challenged the reliability of the hearsay statements, the district court did not reveal

its reasons for concluding the statements were reliable. *Id*. at 1276. This Court remanded for resentencing, holding that under the circumstances in *Lee*, "[s]pecific findings on [the hearsay declarant's] credibility are necessary before the district court can use this evidence as a basis for determining the base offense level...." *Id.*; *see also Baptiste*, 935 F.3d at 1315 (noting the need for a credibility finding where the reliability of hearsay statements is not apparent from the record); *United States v. Gordon*, 231 F.3d 750, 760-61 (11th Cir. 2000) (same).

The record provides strong bases for questioning the reliability of White's hearsay statements. White's statements came into evidence at the sentencing hearing through the testimony of FBI Special Agent Justin Carsten. Agent Carsten testified that White claimed Davis was the exclusive supplier of the drugs White sold to a confidential source. DE:141:31, 32. Agent Carsten, however, was not in a position to assess the credibility of White's claim. Agent Carsten testified that he was not present when White first made this claim, DE:141:30, and Agent Carsten did not testify that he was present on any occasion when White repeated the claim. Agent Carsten also did not identify the persons to whom White made these claims. Moreover, as Davis pointed out at sentencing, White averred in his factual proffer in his own case that he had multiple sources of supply. DE:141:7-8; *see also* DE:109:1-2.

Evidence admitted at trial both undermined White's credibility and established that FBI agents were willing to overlook questionable statements made by White, so long as his cooperation furthered the investigation and prosecution of Davis. For example, agents discovered an inventory of new shoes and clothing in White's vehicle when they searched his car in connection with an August 13, 2020, meeting with Davis. DE:141:38; DE:142:50, 51, 53, 178. White gave agents an implausible explanation for his possession of the shoes, saying he had purchased them at a retail store and intended to resell them for a higher price. DE:141:38; DE:142:51. A reasonably curious person would question White's credibility and suspect that the shoes were stolen. At trial, FBI Special Agent Richard Lee acknowledged that the agents chose not to question White's claim that he had purchased the shoes, and they did not ask to see a sales receipt for the shoes. DE:142:178-81. Agent Lee also acknowledged that if the agents had pursued the matter and discovered White was trafficking in stolen goods, White could no longer have assisted them in the investigation of Davis. DE:142:180. This incident showed that the agents were willing to credit questionable claims made by White, so long as White's cooperation furthered the case against Davis. Agent Carsten persisted with this approach during Davis's sentencing hearing, stating, "I have no idea where he got shoes or did not get shoes." DE:141:38. Agent Carsten was concerned only about securing punishment

49

for Davis based on the greatest amount of drugs he could link to him through any source.

White's credibility and reliability was further undermined by evidence that he was arrested for drug trafficking after Davis was arrested and while White still was under an agreement with the FBI as an informant. DE:136:41; DE:141:38-39; DE:142:181-82. This evidence established not only White's non-compliance with his contractual obligation to refrain from illegal drug trafficking, but also that White was not dependent on Davis to supply the drugs White sold. Agent Carsten testified at sentencing that he was not surprised that White violated his agreement and sold drugs, because White "had previously sold drugs." DE:141:39.

These discrete incidents provide a strong basis for questioning White's credibility and reliability. White's decision to cooperate with authorities with the goal of mitigating the punishment he would receive for his own criminal conduct provides an additional basis for questioning his credibility. *Cf.* Eleventh Circuit Criminal Pattern Jury Instructions, Special Instruction 1.1 ("[W]itnesses who hope to gain more favorable treatment in their own cases, may have a reason to make a false statement in order to strike a good bargain with the Government.").

Faced with the need to bolster White's credibility, the government sought to corroborate White's statements by presenting testimony about an analysis of White's

phone records. This effort failed. White's phone calls were not intercepted, and his conversations were not recorded. DE:141:35. Thus, the government's analysis was limited to looking at the timing of calls between White and Davis. Based on this analysis, Agent Carsten testified in conclusory fashion that information gleaned from the phone records was consistent with White's claims that Davis supplied all of the drugs White sold to a cooperating source. DE:141:32, 34. The government failed, however, to introduce any of White's phone records into evidence. Further, Agent Carsten did not testify about the dates or times of any specific phone calls. The vague nature of the phone records information and the government's failure to introduce the readily available records reveals the weakness of the evidence offered to shore up White's tattered credibility.

Additionally, when asked to elaborate about how the phone records corroborated White's claims, Agent Carsten confused matters by referring to events that post-dated the transactions in question. DE:141:34. Specifically, Agent Carsten referenced the investigation of Davis and the wire intercepts that occurred as part of that investigation. *Id*. The phone calls monitored during the course of the Davis investigation occurred after White was arrested and could not have corresponded to drug transactions that pre-dated his arrest.

The district court accepted White's hearsay statements as true without conducting a meaningful credibility assessment. This error prejudiced Davis. If the district court had carefully assessed White's credibility, it is likely that it would have disregarded his hearsay statements. If the drugs referenced in White's hearsay statements were removed from the drug quantity calculation, Davis would have been held responsible for 718.67 kilograms of converted drug weight rather than 1,822.95 kilograms, DE:141:22, and his sentencing guidelines range would have been 110-137 months rather than 135-168 months (based on a base offense level of 28 rather than 30), or more properly, *see infra* at Issue IV (B), 97-121 months (based on a base offense level of 28, rather than 30, and a criminal history category of III, rather than IV). Using the inflated calculations, the district court imposed a 135-month sentence, at the bottom of the erroneously-determined sentencing guidelines range. DE:141:56, 70.

Because the district court erred when it more than doubled the drug quantity attributed to Davis based on unreliable hearsay information, the sentence must be vacated.

**B. The district court improperly increased Davis's criminal history category, and corresponding sentencing guidelines range, on the basis of a prior conviction that was older than 15 years, where the**

**increase was premised on unreliable hearsay information as to which no credibility finding was made, despite well-grounded challenges by Davis to the informant's credibility and the reliability of his information.**

The calculation of defendant's sentencing guidelines range was erroneously based on an excessive criminal history level that included a prior conviction older than the 15-year limitation imposed by the federal sentencing guidelines, resulting in an increase of Davis's criminal history level from a category III to a category IV and a correspondingly elevated and improper sentencing guidelines range. The district court improperly allowed the calculation of this too-old conviction on the basis of purported relevant conduct that was outside of the indictment period and premised on unreliable hearsay information provided by government informant White, as to which the district court made no requisite finding of the credibility of the informant or the reliability of his information, despite well-grounded challenges to both made by the defendant. *See* Issue IV(A), *supra*.

Pursuant to Application Note 1 to U.S.S.G. § 4A1.1, "a sentence imposed more than fifteen years prior to the defendant's commencement of the offense of conviction may not be counted in calculating the defendant's criminal history level under the guidelines unless the defendant's incarceration extended into this fifteen-year

period." Davis was convicted of the prior offense on September 11, 2000, and was released from prison on December 27, 2004. PSI at ¶ 48; DE:109:7. Since more than fifteen years elapsed between Davis's release from incarceration and the commencement of the instant offense on January 23, 2020, the prior conviction should not have been considered in calculating Davis's criminal history.

As the government acknowledged at sentencing, but for White's hearsay information concerning pre-indictment conduct, the prior conviction would be outside the requisite 15-year period, precluding its consideration in calculating Davis's criminal history under the sentencing guidelines. DE:141:7 (prosecutor: "So Mr. Donnelly is correct. If this Court had found that it wasn't attributed to him, then it would be outside that 15 years."). Because this information consisted of unreliable hearsay as to which no finding of credibility was made, *see* Issue IV(A), *supra*, the increase of Davis's criminal history from a category III to a category IV premised on the prior conviction,[5] which resulted in a correspondingly improper and elevated sentencing guidelines range, was in error and compels a remand for resentencing.

---

[5] Based on a properly calculated properly calculated based offense level of 28, *see* Issue IV(A), supra, and a properly calculated criminal history category of III, Davis's sentencing guidelines range should have been 97-121 months, rather than 135-168 months, as set forth in Davis's PSI objections. *See* DE:109:7-8.

# CONCLUSION

The Court should reverse the convictions and/or vacate the sentence imposed, and remand for resentencing.

Respectfully submitted,

s/ Jacqueline E. Shapiro
Jacqueline E. Shapiro, Esq.
Counsel for Appellant
40 N.W. 3rd Street, PH 1
Miami, Florida 33128
Tel. No. (305) 403-8207

# CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7). According to the WordPerfect program on which it is written, the numbered pages of this brief contain 11,781 words.

s/ Jacqueline E. Shapiro
Jacqueline E. Shapiro, Esq.

# CERTIFICATE OF SERVICE

I CERTIFY that on June 7, 2023, this brief was filed with the Court electronically and thereby served upon Assistant United States Attorney Lisa Tobin Rubio, 99 N.E. 4th Street, Miami, Florida 33132.

s/ Jacqueline E. Shapiro
Jacqueline E. Shapiro, Esq.